UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


LILLIE D. WHEAT                              CIVIL ACTION

VERSUS                                       NO. 12-2989

FLORIDA PARISHES JUVENILE JUSTICE            SECTION "B"(5)
COMMISSION

                         ORDER AND REASONS

Nature of Motion and Relief Sought:

    Before the Court is Florida Parishes Justice Commission's (the "Commission") Motion for Summary Judgment, Plaintiff Lilian Wheat's ("Wheat") brief in opposition, the Commission's reply brief, and related filings. (Rec. Docs. 25, 30, 38, 39, 40, 44, 46).

    **IT IS ORDERED** that the Motion is **GRANTED**.


Procedural History and Facts of the Case:

    Wheat, a former guard at the Florida Parishes Juvenile Detention Center ("Detention Center"), brings FMLA and Title VII claims against the Commission for retaliatory discharge, alleged pre-termination retaliation, and sexual harassment by a twelve-year old inmate.

    Wheat started her employment with the Commission in May of 2000. She originally received consistent pay raises, favorable reviews, and was promoted to Shift Supervisor in 2005 and Assistant Director of Female Services in 2008. In 2009 Wheat took

leave under the FMLA to undergo surgery. On November 22, 2009, the Commission terminated her employment, asserting that her leave had expired. Wheat then initiated suit under the FMLA in this Court, the parties amicably settled, and she was reinstated on March 8, 2011. Because there were no openings for Shift Supervisors, she was reinstated as an Officer with a Shift Supervisor's pay. After reinstatement, she expressed disinterest in potential promotions to Shift Supervisor because, as she explained, she did not want to forego overtime pay.

Roughly eight months later, on November 22, 2011, Wheat filed an "Unusual Occurrence Report" concerning a twelve-year old female inmate who allegedly harassed her. The report included complaints that the twelve-year old had invaded her "personal space," stared into her eyes, sang sexually suggestive songs, and otherwise made her feel "invaded" and "violated." Shortly thereafter Wheat also complained that the twelve-year old "sniffed" her, occasionally touched her, "flashed her," and further misbehaved with the intention of causing Wheat to touch her.

On November 14, 2012, Wheat had an altercation with another juvenile. She injured her knee and arm and was bitten during the altercation. Out of concern that she may have contracted "AIDS or hepatitis," she requested access to the medical records of the juvenile that bit her, which the Commission denied on the grounds

of medical privacy.

Finally, on January 3, 2012, Wheat had another altercation with yet another juvenile. This altercation ultimately led to her termination on January 19, 2012.  Her complaint asserts retaliation claims under the FMLA and Title VII, alleging that her termination, denial of her request for the medical records of the inmate that bit her, and other adverse employment actions were made in retaliation to her prior FMLA suit and complaints about alleged sexual harassment by the twelve-year old inmate. She also seeks to hold the Commission directly liable under Title VII for alleged sexual harassment committed by the twelve-year old.

DISCUSSION

**I. Summary Judgment Standards**

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2012). A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in her favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528(5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Summary judgment is appropriate if the non-movant "[f]ails to make a showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp. v. Catrett*, 477 U.S. 317,324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial. *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293,301 (5th Cir.2004) (internal citations omitted). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382,394 (5th Cir.2000) (quoting Little v. Liquid Air Corp., 37 F.3d

4

1069,1075 (5th Cir.1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366F.Supp.2d 425, 430 (E.D .La.2005).

## II. Retaliation Claims

To make a prima facie case for retaliation under the FMLA, an employee must show (1) she engaged in a protected activity, (2) the employer took adverse employment action, and (3) a causal link between such adverse action and the protected activity. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332(5th Cir. 2005). Similarly, to make a prima facie case of retaliation under Title VII, an employee must show: (1) that she engaged protected activity, (2) she experienced an adverse employment action, and (3) a causal link. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)

When there is no direct evidence of discriminatory intent, as is the case here, the *McDonnell-Douglas* burden-shifting framework applies to both FMLA and Title VII retaliation claims. *Richardson*, 434 F.3d at 332. Under that framework, "once the employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer succeeds in doing so, the burden shifts back to the

employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Id.* at 332-33.

Here, Wheat asserts FMLA and Title VII retaliation claims premised on both retaliatory discharge and lesser adverse employment actions. As to pre-termination retaliation, she claims she suffered no less than ten adverse employment actions:

(1) being initially assigned to janitorial duties.
(2) transfer to work with females.
(3) "being bitten by a female juvenile [inmate]."
(4) denial of her request for the medical records for the inmate that bit her.
(5) "being denied support [from her] supervisors in difficult situations with female juveniles on two occasions"
(6) "being sexually harassed by a female juvenile"
(7) denial of a transfer request
(8) "being denied support by [her] supervisors in "difficult situations with juveniles"
(9) "being denied a timely performance evaluation."
(10) denial of a pay increase.

(Rec. Doc. 40 at 4).

The Fifth Circuit has held that only "ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating, satisfy the 'adverse employment action' element of a prima facie case of retaliation." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001)(quoting *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th

6

Cir.1999). Most generally, an employer's action may constitute an adverse employment action if it "makes the job objectively worse." *Hunt*, 277 F. 3d at 770. Thus, to determine whether an adverse employment action occurred, courts should use an objective standard; the plaintiff's subjective preference is irrelevant. *Cefalu v. Tangipahoa Parish Sch. Bd.*, CIV.A. 12-1380, 2013 WL 5329808 (E.D. La. 2013) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir.2004)). "In cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, no adverse employment action exists." *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009)(quotations omitted).

Wheat has failed under that standard to establish a prima facie case for pre-termination retaliation as premised on each her ten proffered adverse employment actions.[1] She has offered no evidence showing that working with female inmates rather than males made the job objectively worse; she has offered no evidence that she was assigned janitorial duties for any significant length of time; she has not and indeed cannot show that denying medical records on the grounds of privacy altered the terms of her employment; she has only made conclusory statements concerning the "lack of support" shown by her supervisors; and

---

[1] As an initial matter, Wheat's claims premised on "being bitten by a female juvenile" and "being sexually harassed by a female juvenile" may be dismissed out of hand for failure to substantiate or even allege causation.

she has failed to offer any evidence that the slight delay in her performance evaluation objectively altered her employment. For these and other reasons, Wheat has failed to demonstrate an issue of material fact concerning her pre-termination retaliation claims under both Title VII and the FMLA.

As for Wheat's retaliatory discharge claims, she has failed to carry her burden in demonstrating pretext. Assuming but not conceding that Wheat established a prima facie case of retaliatory discharge under both the FMLA and Title VII, the Commission submitted ample evidence of a legitimate, non-discriminatory reason for terminating Wheat's employment: her violation of several policies and exhibition of gross misconduct during the January, 3, 2012 altercation with a juvenile inmate. Most notably, the Commission provided the court with video footage of the incident and numerous contemporaneous eye witness accounts in which Wheat's co-workers and superiors state that she (i) strenuously applied a "mandibular angle pressure point" to a juvenile despite repeated orders to cease and (ii) made repeated threats to--among other things--"whip that bitch's ass." (Rec. Doc. 25-5 at 14, 16, 20, & 21). The video corroborates those accounts and shows Wheat being forcibly restrained by other officers as she apparently attempted to fulfill her threats to "whip" the juvenile inmate. This testimony and the accompanying video more than satisfies the Commission's burden to produce

evidence of a non-discriminatory reason for her discharge.

Accordingly, Wheat must "demonstrate a material issue of disputed fact as to whether [defendants'] proffered explanation was merely a pretext for retaliation." *Gee v. Principi,* 289 F.3d 342, 347 (5th Cir. 2002). She may establish such pretext directly, by showing that a discriminatory reason motivated management, or indirectly, by showing that the reasons given for the Commission's actions are simply not believable. *Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir.2001); *see also Reeves,* 530 U.S. at 147, 120 S.Ct. at 2108. Her filings have done neither.

Wheat's brief primarily employs what are seemingly random rhetorical questions (*e.g.*,"Why is the Defendant being selective with relevant evidence?"). (Rec. Doc. 40 at 10). The crux of her argument appears to be that the Commission possesses unedited video of the January 2012 incident that would somehow exonerate her. Such rhetorical questioning and speculation as to additional footage do not in any way establish that she was terminated under pretext.

The only "evidence" proffered by Wheat is (i) Wheat's own Declaration, which purports to incorporate by reference a thirty-two page "Response to Defendant's Statement of Uncontested Material Fact" (Rec. Doc. 40-4), (ii) the Declaration of David Finley, who previously worked as a training coordinator at the Detention Center, and (iii) the Declaration of Edward Marshal, a

former Detention Center officer. None of these materials give rise to genuine issues of material fact. The Marshall Declaration (which addresses only events that are over a decade old and in no way relate to Ms. Wheat) is entirely irrelevant. The Finley Declaration offers little more than narration of the Commission's video and Finley's opinions as to the propriety of Wheat's actions. Neither of those declarations directly contradict the several eye-witness accounts concerning Wheat's extended use of force and explicit threats to the juvenile in question. To the extent Wheat's own declaration seeks to contradict those statements--let alone the content of the video itself--it is insufficient to raise a genuine issue of material fact concerning the issue of pretext.[2] *See, e.g., Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-76 (5th Cir.1994)("[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.")

In summary, Wheat has failed raise genuine issues of material fact concerning her retaliation claims under both the

---

[2] Rather than address the evidence offered against her in the memorandum opposing summary judgment, Wheat's counsel elected to attach a "Response to Defendant's Statement of Uncontested Material Fact," which appears to make evidentiary objections to 131 of the Commission's proffered uncontested material facts. (Rec. Doc. 40-1). To the extent that document offers objections that the eye-witness accounts of Wheat's January 3, 2012 actions constitute hearsay, such objections are overruled. Those statements are admissible in part as party-admissions under FRE 801(d)(2) and in their entirety under FRE 803(6) and FRE 807.

FMLA and Title VII. As to her claims of pre-termination retaliation, she has failed establish a prima facie case. As to her claims for retaliatory discharge, she has failed to establish pretext.

### III. Sexual Harassment Claims

Wheat's sexual harassment claims merit little discussion. Briefly put, Wheat seeks to hold the Commission liable for sexual harassment she allegedly endured at the hands of a twelve-year old inmate whom she guarded. While it is perhaps theoretically possible that a juvenile detention center could be liable for a twelve-year old inmate's sexual harassment of a guard, Wheat has provided virtually no legal analysis as to why she thinks that is the case here.

For an employer to be liable for hostile environment caused by sexual harassment, a plaintiff must among other things show that "the harassment affected a term, condition, or privilege of employment." *Donaldson v. CDB Inc.*, 335 F. App'x 494, 501 (5th Cir. 2009). To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir.2008) (quotations and citations omitted). Severity of that conduct must be "judged

from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). (quotations and citations omitted). "Relevant factors are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Separately, an employer's liability for such harassment depends on the status of the harasser. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). This issue normally turns on the role of the harasser plays *as an employee* in the defendant institution. For instance, where the harasser is the plaintiff's supervisor, the employer is vicariously liable if the harasser took adverse employment action against the plaintiff or if the employer failed to raise certain affirmative defenses not asserted here. *Id.* at 2442. Where the harasser is a plaintiff's co-worker, an employer is only liable if it was negligent in controlling working conditions. *Id.* at 2439.

The Fifth Circuit apparently has yet to address under what circumstances and by which standards liability for sexual harassment by juvenile inmates may be imputed to employer

12

detention centers. The Tenth Circuit, in an unpublished opinion, has held that adult inmate conduct is *per se* not imputable to a prison. *Maine v. Oklahoma Dept. of Corrections*, No. 97-6027, 1997 WL 602688, at *2 (10th Cir.1997); *see also* Powell v. Morris, 37 F. Supp. 2d 1011, 1017 (S.D. Ohio 1999)("Prison employees inherently assume the risk of some rude inmates. It is absurd to expect that a prison can actually stop all obscene comments and conduct from its inmates--people who have been deemed unsuited to live in normal society.") The Sixth Circuit, on the other hand, has acknowledged that by "choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior[,]" but nevertheless allowed for prison liability where a prison guard's coworker "encouraged, endorsed, and even instigated the inmates' harassing conduct." *Slayton v. Ohio Dep't of Youth Servs*., 206 F.3d 669, 677-78 (6th Cir. 2000). Similarly, the Eight Circuit has held that "in absence of special circumstance . . . the conduct of [juvenile] inmates cannot be attributed to an employer in order to show that the harassment affected a term, condition, or privilege of employment." *Id. Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007).

    Whatever standard the Fifth Circuit may ultimately adopt, it is clear Wheat has neither proven nor alleged that (i) the twelve-

year old's harassment was objectively severe and pervasive under the circumstances or (ii) culpability on the part of the Commission sufficient to attribute the twelve-year old's actions to that body. As every court to have addressed the question has recognized, those whose work entails forcibly guarding inmates accept a risk of harassment. Similarly, those who guard twelve-year old children should expect puerile behavior.  Briefly put, the twelve-year old's actions, while by no means appropriate, are hardly surprising given her age, life experience, and immediate environment.

Conclusion

    Wheat has not produced evidence or designated specific facts showing the existence of a genuine issue for trial as to any of her claims. It is therefore **ORDERED** that the Commission's Motion for Summary Judgment be **GRANTED** and the case be **DISMISSED WITH PREJUDICE.**

    New Orleans, Louisiana, this 21st day of May, 2014.

    _____
    UNITED STATES DISTRICT JUDGE